UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHERYL COX,

                                    Plaintiff,

                                                              Case # 22-CV-6207-FPG

v.

                                                              DECISION AND ORDER

CITY OF ROCHESTER and DAKOTA
VANBREDERODE

                                    Defendants.

## INTRODUCTION

Plaintiff Cheryl Cox brings this civil rights action against the City of Rochester ("the City") and Rochester Police Officer Dakota Vanbrederode related to the shooting of her dog, Taz. Plaintiff alleges that, in shooting her dog, the City implemented an official municipal policy that caused Plaintiff's Fourth Amendment rights to be violated, that Officer Vanbrederode unreasonably seized her personal property in violation of the Fourth Amendment, and that Officer Vanbrederode committed a trespass to chattels or conversion. ECF No. 5. Defendants move for summary judgment. ECF No. 50. Plaintiff opposes the motion. ECF No. 51. For the reasons that follow, Defendants' motion is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the

1

non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## BACKGROUND

Among the evidence proffered by the parties is video footage—taken from police officers' body worn cameras—of the encounter between Plaintiff, her dog, Taz, and police. Video footage can, but does not always, conclusively establish facts for purposes of summary judgment. *See Scott v. Harris*, 550 U.S. 372, 379–80 (2007); *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 482 (N.D.N.Y. 2017). Where a videotape "leaves no doubt as to what occurred," *United States v. Paul*, 904 F.3d 200, 203 (2d Cir. 2018), a district court need not countenance contrary factual assertions. *See Scott*, 550 U.S. at 380; *Heicklen v. Toala*, No. 08-CV-2457, 2010 WL 565426, at *2 (S.D.N.Y. Feb. 18, 2010).

Conversely, if the video evidence is "ambiguous" or otherwise inconclusive, *Hicks v. Vill. of Ossining*, No. 12-CV-6874, 2016 WL 345582, at *5 (S.D.N.Y. Jan. 27, 2016), a court must employ its usual summary judgment standards and construe the evidence in the non-moving party's favor. *Accord Hulett*, 253 F. Supp. 3d at 482 ("[W]hile the video evidence submitted by the parties will certainly be considered and carefully reviewed at this juncture, ... summary adjudication of a plaintiff's civil rights claim [is permitted] only in those exceptional cases where the video evidence in the record is sufficient to blatantly contradict one party's version of events." (internal quotation marks and brackets omitted)).

The incident that gave rise to the present action occurred on the night of February 10, 2021. ECF No. 50-2 at 1; ECF No. 51 at 7. Bodycam footage shows Rochester Police Department

2

("RPD") Officers Brock, Paszko, and Vanbrederode arriving at Plaintiff's home. Pl. Exs. 2, 3, 4. When the officers arrive, they search Plaintiff's yard and driveway. *Id.* Eventually, they notice Plaintiff and Taz have appeared at the side door. Pl. Ex. 2 00:59. Taz is a Pitbull, who at the time of the incident weighed about 70 pounds. ECF No. 51-1 at 1. Officer Paszko says, "police department." Pl. Ex. 2 00:59. Plaintiff responds, "police," and Officer Paszko replies "yeah, watch the dog, RPD." *Id.* 01:00-01:03. Plaintiff responds, "He's okay. He's not vicious." *Id.* 01:03-01:05. Officer Vanbrederode then says, "make sure to lock him up," and Officer Paszko also says, "make sure the dog's locked up." *Id.* 01:05-01:07.

Plaintiff then closes the door, and the dog can be heard behind it. Pl. Ex. 3 00:34-00:36. Officer Brock asks Plaintiff "What's going on here?" and she begins to explain why she called the police. *Id.* Plaintiff tells the officers that she called the police because of a dispute with her daughter. *Id.* 00:40-01:06. As Plaintiff is talking to the officers, Taz can be heard barking from behind the door. *Id.* After she finishes explaining her dispute with her daughter, she tells Officer Brock "He's a big dog. He just..." and Officer Brock interrupts by asking "What breed? Is it a Pitty?". *Id.* 01:08-01:11. Plaintiff replies "Yeah, listen he don't bite." *Id.* 01:12-01:15. As she is saying this, she opens the door, and the dog leaves the house. *Id.* As the dog is running out, Plaintiff yells, "He don't bite. He just wants to play." *Id.*

What happens next is disputed by the parties and is not clear from the bodycam footage. Defendants claim that Officer Paszko ran down the driveway and then up the front porch to get away from the dog. ECF No. 50-1 at 8. Defendants maintain that the dog began following Officer Paszko up the porch, and that Officer Vanbrederode drew and discharged his firearm when the dog was within a couple of feet of Officer Paszko. *Id.* According to Officer Vanbrederode, the dog covered more than ten feet in two seconds and had an aggressive stance, with its head down. *Id.* at

7–8. Officer Vanbrederode maintains that Taz did not wag his tail, which he knew from training indicated the dog was not in a friendly or playful mood. *Id.* at 8. Plaintiff maintains that she opened the door for Officer Brock to pet Taz and then Taz ran down the driveway. ECF No. 51-1 at 2. Plaintiff specifically denies that Taz followed Officer Paszko. *Id.* Plaintiff maintains that Taz's behavior as he moved down the driveway was non-threatening and that he was wagging his tail and not charging aggressively at officers. ECF No. 51 at 15.

The bodycam footage shows that the time from when Plaintiff opened the door to let the dog out until shots were fired is approximately three seconds. Pl. Ex. 3 01:13-01:16. As the dog is running down the driveway, he cannot be heard barking or growling. *Id.* The footage shows Officer Paszko moving towards the front porch while the dog also moves toward the porch, and as Officer Paszko is going up the stairs to the porch, Officer Vanbrederode fires three shots at the dog. Pl. Ex. 4 01:07-01:11. The dog then jumps off the porch back into the driveway and can be heard crying. Pl. Ex. 3 01:16-01:18.

It is undisputed that Plaintiff's dog, Taz, did not die as a result of the shooting. ECF No. 50-2 at 2; ECF No. 51-1 at 2. According to Plaintiff, after the incident, Taz had to have surgery to remove the bullet from his chest and she incurred veterinary bills amounting to approximately $3,000 for his treatment. ECF No. 51-1 at 5. She also claims that after the shooting she noticed behavioral changes in Taz. ECF No. 51-3 at 18. For instance, he does not like the sound of bullets or firecrackers, he barks if he sees officers, and he is not as playful as he used to be. *Id.* She further alleges that her porch was damaged due to the shooting and the cost to repair it is estimated to be more than $2,000. ECF No. 51-1 at 5

On May 6, 2022, Cox brought the present action in this Court. ECF No. 1. She then amended her complaint on June 13, 2022. ECF No. 5. In her amended complaint, Cox brought

three claims against the City of Rochester and police Officer Dakota Vanbrederode. *Id.* The first two claims allege that the City implemented a municipal policy that caused Plaintiff's Fourth Amendment rights to be violated, and that Officer Vanbrederode unreasonably seized her personal property in violation of the Fourth Amendment. *Id.* Her final claim is for state-law trespass to chattels/conversion against Officer Vanbrederode as well as the City under a theory of *respondeat superior*. *Id.*

## DISCUSSION

Defendants move for summary judgment on all three of Cox's claims. The Court discusses each in turn.

## I.    First Claim: Municipal Liability Under *Monell* Under 42 U.S.C. § 1983

Plaintiff's first claim alleges municipal liability under 42 U.S.C. § 1983 due to the City of Rochester's "unwritten custom or policy of permitting officers to shoot dogs with alarming frequency, without sufficient justification, and in situations where non-lethal alternatives are available and effective." ECF No. 51 at 22. It also alleges municipal liability due to failure to train and failure to supervise, which amounts to deliberate indifference. ECF No. 51 at 25, 28. The Court concludes that Plaintiff has not provided enough evidence to support her *Monell* claim, and therefore the first claim is dismissed with prejudice.

### a.   Underlying Constitutional Claim

In *Monell v. Department of Social Services*, the Supreme Court held that municipalities could be held liable under 42 U.S.C. § 1983 for constitutional violations. 436 U.S. 658 (1978). However, *Monell* does not provide a separate cause of action. *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Instead, it extends liability to a municipal organization where that organization's failure to train or supervise, or the policies or customs that it has sanctioned, led to

an independent constitutional violation. *Id.* Therefore, prior to establishing municipal liability, a plaintiff must establish an underlying, independent constitutional violation. In this case, Plaintiff argues that the unreasonable shooting of Taz is an underlying constitutional violation because the unreasonable shooting of a companion animal that does not lead to its death is an unconstitutional seizure. ECF No. 5 at 20. On the other hand, Defendants argue that only the unreasonable killing of a companion animal is an unconstitutional seizure. ECF No. 50-1 at 9. For the reasons discussed below, the Court agrees with Plaintiff.

In *Carroll v. County of Monroe*, the Second Circuit held that the "unreasonable killing of a companion animal constitutes an unconstitutional 'seizure' of personal property under the Fourth Amendment." 712 F.3d 649, 651 (2d Cir. 2013) (per curiam). The Second Circuit's decision was brief, but in reaching its holding, it cited to numerous decisions in other circuits reaching the same conclusion. *Id.* Notably, all of the decisions cited by the Second Circuit involved cases where a dog died as the result of the shooting. *See id.*

The parties cite to only one district court decision in this Circuit that has recognized that the nonfatal wounding of a dog could be an unconstitutional seizure in violation of the Fourth Amendment. *See Shimburski v. McCarthy*, No. 17-CV-699S, 2020 WL 5653298, at *9 (W.D.N.Y. Sept. 23, 2020). In *Shimburski*, the court relied on the reasoning in *Bateman v. Driggett*, No. 11-13142, 2012 WL 2564839 (E.D. Mich. July 2, 2012), to support its holding. *Id.* In *Bateman*, the court noted that a seizure "of personal property occurs when there is some meaningful interference with an individual's possessory interests in that property." 2012 WL 2564839, at *7 (quoting *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992) (internal quotations marks omitted)). Ultimately, the *Bateman* court concluded that even though the plaintiff's dog was not killed when it was shot by

an officer, there was still a meaningful interference with plaintiff's possessory interest in his dog, which constituted a seizure. *Id.*

Other courts outside of this Circuit have come to the same conclusion. *See McCarthy v. Kootenai County*, No. CV08–294–N–EJL, 2009 WL 3823106, at *5 (D. Idaho Nov. 12, 2009) (holding that the wounding of a dog could be a seizure because the "value of the dog was clearly reduced by the injury it sustained and the possessory interest of the Plaintiffs in the dog was significantly affected by the officer shooting and injuring the dog"); *Jackson v. Goetz*, No. 19-CV-00258-WSS, 2021 WL 6280384, at *6 (W.D. Pa. Nov. 22, 2021), *report and recommendation adopted*, No. 19-CV-258, 2022 WL 45054 (W.D. Pa. Jan. 5, 2022) (finding an unconstitutional seizure where a dog was injured, but not killed when shot by an officer). This Court agrees that the nonfatal wounding of a dog can be an unconstitutional seizure because it constitutes a meaningful interference with an owner's possessory interest in the dog.

Nevertheless, it is only an unconstitutional seizure if the wounding is unreasonable. Therefore, in this case, Plaintiff must demonstrate that the nonfatal wounding of Taz was unreasonable to establish a constitutional violation. When assessing the reasonableness of a seizure, a court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion" and determine whether "the totality of the circumstances justified [the] particular sort of ... seizure." *Carroll,* 712 F.3d at 651 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). As the Second Circuit acknowledged in *Caroll*, on one side of the balance there is the emotional attachment between a dog and an owner. *Id.* However, on the other side, there is a significant governmental interest in ensuring officer safety. *Id.* Further, the Second Circuit acknowledged that "courts have held that, at least in some circumstances, it is reasonable for an officer to shoot a dog

that he believes poses a threat to his safety or the safety of the community." *Id.* Therefore, the key question is whether a jury could reasonably conclude that the officer's actions were unreasonable under the totality of the circumstances. *Id.* at 651–52.

When evaluating the totality of circumstances, a court may consider the breed of the dog involved, the location of the dog at the time of the shooting—whether it was in a home or running free in public—the availability of non-lethal options to control the dog, and whether the dog posed a danger to the officer or the public. *See Arurdia v. City of New York*, No. 18-CV-04189, 2019 WL 1406647, at *8 (E.D.N.Y. Mar. 28, 2019); *Strong v. Perrone*, No. 17-CV-6183-FPG, 2020 WL 1445877, at *3 (W.D.N.Y. Mar. 25, 2020); *Matteson v. Hall*, No. 18-CV-06772-MAT, 2019 WL 2192502, at *8 (W.D.N.Y. May 21, 2019). A dog's behavior is also relevant. *Strong*, 2020 WL 1445877, at *4. If a dog is showing signs of aggression such as baring teeth, ears back, tail straight, lunging, growling, snarling, barking, or charging, courts regularly find that it is reasonable for officers to defend themselves. *Id.*

Here, the parties do not dispute that Taz is a Pitbull. ECF No. 51-1 at 1. They also do not dispute that Officer Vanbrederode fired three shots at Taz as he was climbing the steps of Plaintiff's porch. Pl. Ex. 4 01:07-01:11. However, Taz's behavior is disputed by the parties. Defendants claim that Officer Paszko ran down the driveway and then up the front porch to get away from the dog. ECF No. 50-1 at 8. They also claim that as the dog began following Officer Paszko up the porch, Officer Vanbrederode drew and discharged his firearm when the dog was within a couple of feet of Officer Paszko. *Id.* According to Officer Vanbrederode, the dog covered more than ten feet in two seconds and had an aggressive stance, with its head down. *Id.* at 7–8. Officer Vanbrederode maintains that Taz did not wag his tail. *Id.* at 8. On the other hand, Plaintiff maintains that Taz simply ran down the driveway, and she specifically denies that Taz followed Officer Paszko. ECF

No. 51-1 at 2. Plaintiff also maintains that Taz's behavior as he moved down the driveway was non-threatening and that he was wagging his tail and not charging aggressively at officers. ECF No. 51 at 15.

As discussed above, the bodycam footage of the incident is inconclusive. The incident occurred at night, so it is dark and difficult to see what happens. Nevertheless, there is nothing that conclusively shows that Plaintiff's account of the incident is inaccurate and therefore, at the summary judgement stage, Plaintiff's version of the incident must be accepted as true. Given Plaintiff's statements that Taz was acting in a nonthreatening manner, with his tail wagging, and not charging at the officers, a jury could reasonably conclude the officer's actions were unreasonable under the totality of the circumstances. Therefore, Plaintiff has sufficiently established an underlying, independent constitutional violation to survive a motion for summary judgment.[1]

### b. Municipal Liability

The Court now turns to whether Plaintiff has sufficiently established municipal liability to survive a motion for summary judgment. It concludes that Plaintiff has failed to do so because she has not established a pattern of misconduct, which is required to support her *Monell* claim. The Court further concludes that she has failed to show that her claim falls into a narrow range of circumstances in which establishing such a pattern is not required.[2]

---

[1] While the Court ultimately concludes in Part II, *infra*, that Officer Vanbrederode is entitled to qualified immunity, "[q]ualified immunity is a defense available only to individuals sued in their individual capacity." *Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013). Therefore, qualified immunity is irrelevant when determining whether there is an underlying, independent constitutional violation for a *Monell* claim, and the qualified immunity given to Officer Vanbrederode does not shield the City from liability under *Monell*.

[2] While Plaintiff argues that the Court must deny Defendants' motion on the *Monell* claim due to Defendants' failure to comply with Local Rule 56.1, the Court disagrees as the Court concludes that Defendants' Rule 56.1 statement complied with the Local Rules. However, even if it did not comply, the Court would not deny the motion on that ground. *See Tota v. Bentley*, 379 F. App'x 31, 22 (2d Cir. 2010) (summary order).

"[A] local government is liable under § 1983 for its policies that cause constitutional torts."

*McMillian v. Monroe County, Alabama*, 520 U.S. 781, 784 (1997); *see Monell*, 436 U.S. at 693.

Known as *Monell's* "policy or custom" requirement, a plaintiff who seeks to impose liability on a

local government pursuant to 28 U.S.C. § 1983 must demonstrate that "action pursuant to official

municipal policy" caused the injury. *Monell*, 436 U.S. at 692. "Official municipal policy includes

the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so

persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S.

51, 61 (2011). A plaintiff may satisfy this "policy or custom" requirement by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government
> officials responsible for establishing the municipal policies that caused the particular
> deprivation in question; (3) a practice so consistent and widespread that, although not
> expressly authorized, constitutes a custom or usage of which a supervising policy-maker
> must have been aware; or (4) a failure by policymakers to provide adequate training or
> supervision to subordinates to such an extent that it amounts to deliberate indifference to
> the rights of those who come into contact with the municipal employees.

*Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City*

*of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

In this case, Plaintiff is not alleging that the formal policy endorsed by the municipality is

unconstitutional or that a policymaker took action that caused the particular deprivation in

question. Instead, she is arguing that the City should be held liable because it has an "unwritten

custom or policy of permitting officers to shoot dogs with alarming frequency, without sufficient

justification, and in situations where non-lethal alternatives are available and effective," which is

so consistent and widespread it constitutes a custom or usage of which a supervising policymaker

must have been aware. ECF No. 51 at 22. She also alleges that the city should be held liable due

to its failure to train and failure to supervise, which amounts to deliberate indifference. ECF No.

51 at 25, 28.

10

Municipal liability in *Monell* was based on the city's affirmative conduct, but in later decisions, the Supreme Court left a narrow opening for § 1983 claims seeking liability based on governmental inaction. *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir 2007). Plaintiff's usage or custom claim, failure to train claim, and failure to supervise claim all fall into the category of claims based on government inaction. *See id.* at 191–92. In such cases where claims are based on government inaction, to meet *Monell's* "policy or custom requirement," a plaintiff must demonstrate that a local government was faced with a "pattern of misconduct" and in response did "nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Id.* at 192 (internal quotation omitted); *see also Connick*, 563 U.S. at 62 (holding that a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'" to meet the policy or custom requirement under a failure to train theory); *Vasquez v. City of New York*, No. 20-CV-4641, 2023 WL 8551715, at *6 (S.D.N.Y Dec. 11, 2023) (holding that a plaintiff must establish a pattern of allegations or complaints about similar unconstitutional activity to meet the policy or custom requirement under a failure to supervise theory); *Jones v. Town of East Haven*, 691 F.3d 72, 82 (2d Cir. 2012) (holding that the plaintiff failed to establish municipal liability under a custom or usage theory because she failed to show a pattern of abusive conduct among police officers). Such a pattern must be "sufficiently persistent or widespread as to acquire the force of law" in order to state a claim. *Reynolds*, 506 F.3d at 192.

In the present case, Plaintiff's evidence to support her *Monell* claim includes (1) incident reports detailing cases where dogs were shot by RPD from 2013 to 2018 (ECF No. 51-9), (2) statistics—which are supported by a newspaper article (ECF No. 51-8) and expert testimony (ECF No. 51-14)—related to the number of dogs shot by officers, (3) depositions related to other cases

where RPD shot dogs (ECF Nos. 51-12–13, 19–30, 33–34), and (4) descriptions of other dog shootings by RPD found in Plaintiff's Rule 56.1 Counterstatement of Undisputed Facts (ECF No. 51-1)—which are supported by depositions and bodycam footage. For the reasons discussed below, the Court concludes that Plaintiff has failed to provide evidence of a pattern of misconduct that is sufficiently persistent or widespread as to acquire the force of law. Plaintiff provides ample evidence of RPD officers shooting dogs. However, shooting a dog is not misconduct. It is only misconduct when the officer has acted unconstitutionally—that is, when under the totality of the circumstances, an officer's shooting of the dog was unreasonable. *See Caroll*, 712 F.3d at 651. As the Court discussed above, there are a number factors to consider when evaluating the reasonableness of a dog shooting, such as the breed of the dog, the location of the dog, the availably of non-lethal alternatives, and the dog's behavior. *See Arurdia*, 2019 WL 1406647, at *8; *Strong*, 2020 WL 1445877, at *3–4; *Matteson*, 2019 WL 2192502, at *8.

First, the Court concludes that the incident reports detailing cases where dogs were shot by RPD from 2013 to 2018 (ECF No. 51-9) are insufficient to demonstrate a pattern of misconduct because they do not provide any evidence that the officers acted unreasonably in shooting the dogs. In each incident report, the officers allege that prior to shooting a dog, the dog was either charging, acting aggressively, or acting in some other manner that made them fear for their safety. Plaintiff offers no evidence to counter the officer's descriptions of the incidents. Thus, while the incident reports show that nearly 50 dogs were shot by police between 2013 and 2018, absent evidence that the officers acted unreasonably in shooting the dogs, the Court cannot conclude that the evidence demonstrates a pattern of misconduct. *See id.*

Second, the Court concludes that the statistics offered by Plaintiff do not establish a pattern of misconduct. Plaintiff provides an article from the *Democrat & Chronicle* stating that 87 dogs

12

were shot at between 2004 and 2009. ECF No. 51-8. However, the article does not provide the Court with enough details from each individual shooting to determine whether or not the officers acted reasonably. Plaintiff also cites to a report from James Crosby, Plaintiff's expert witness, stating that between 2014 and 2022, RPD officers shot and killed at least 66 pet dogs. ECF No. 51-14 at 6. However, Crosby does not cite any source for this number or give any information as to the reasonableness of these shootings. Again, without evidence that officers acted unreasonably in shooting the dogs, the Court cannot conclude that there is a pattern of misconduct.

Third, the Court concludes that the depositions from other dog shooting cases provided by Plaintiff (ECF Nos. 51-12–13, 19–30, 33–34) are insufficient to demonstrate a pattern of misconduct. The Court notes that a few of the depositions are referenced in Plaintiff's Rule 56.1 Counterstatement of Undisputed Facts and to the extent they are used by Plaintiff to demonstrate the unreasonableness of a shooting, they will be discussed below. However, on the whole, the Court finds the depositions do not provide evidence of officers acting unreasonably in shooting dogs. In these depositions, again, the officers allege that prior to shooting a dog, the dog was either charging, acting aggressively, or acting in some other manner that made them fear for their safety. Excluding the depositions referenced in Plaintiff's Rule 56.1 Counterstatement of Undisputed Facts, Plaintiff does not provide any evidence to counter the officer's descriptions of the incidents. Plaintiff merely implies through questioning that in some cases, less lethal options could have been effective, which is insufficient to demonstrate unreasonableness.

Finally, the Court turns to descriptions of other dog shootings by RPD found in Plaintiff's Rule 56.1 Counterstatement of Undisputed Facts. ECF No. 51-1. These descriptions are supported by the depositions provided by Plaintiff as well as bodycam footage supplied by Plaintiff. *See id.* Plaintiff identifies nine officers that have shot dogs and describes the circumstances of those

13

shootings. Regarding the descriptions of shootings by Officers Zimmerman, Celentano, Laureano, Nellist, Kelly, and Algarin, Plaintiff either does not allege or does not provide evidence that these shootings were unreasonable. *See id.* at 11–21.

The Court acknowledges that Plaintiff claims in a few of these descriptions that officers were illegally searching or illegally present on private property when a dog shooting occurred. *See id.* However, the Supreme Court has held that a separate Fourth Amendment violation may not be used "to manufacture a [seizure] claim where one would not otherwise exist." *County of Los Angeles v. Mendez*, 581 U.S. 420, 427 (2017). Therefore, the reasonableness of the search or the officer's presence on the property is irrelevant when evaluating the reasonableness of a dog shooting because the dog shooting is a separate seizure. *See Strong*, 2020 WL 1445877, at *3. As such, the Court does not consider any allegations of the unreasonableness of a search or the officer's presence on a property allegations that the officers acted unreasonably in shooting the dogs in those cases.

On the other hand, Plaintiff alleges that Officers Cala, Pickney, and Leach acted unreasonably in shooting dogs. Officer Cala was involved in multiple dog shootings, but Plaintiff only claims that one was unreasonable in 2018. ECF No. 51-1 at 12–14. Officers Pinckney and Leach were involved in one alleged unreasonable shooting each in 2019 and 2020 respectively. *Id.* at 14–16, 21–23. Therefore, Plaintiff has identified three cases of misconduct over three years. The Court declines to decide if the officers acted unreasonably in these cases because, even assuming that they did, three incidents of misconduct over three years are insufficient to establish a pattern of misconduct for the *Monell* claim. *Jones v. Town of East Haven*, 691 F.3d at 85 (holding that three instances of misconduct over a number of years "fell far short of showing a policy, custom, or usage"); *Rubio v. Cnty. of Suffolk*, 328 F. App'x. 36, 38 (2d Cir. 2009) (summary order) (holding

14

that a few violations by a small group of employees with no policymaking authority was insufficient to establish municipal liability under a custom or practice or deliberate indifference theory); *Hu v. City of New York*, 927 F.3d 81, 106 (2d Cir. 2019) (holding that four instances of misconduct were insufficient to establish municipal liability). Thus, the evidence offered by Plaintiff does not demonstrate a pattern of misconduct and therefore, the Court now turns to whether Plaintiff's claim is one that falls into a narrow range of circumstances in which establishing such a pattern is not required.

For her failure to train claim, Plaintiff argues that while a pattern of similar violations is usually required to establish municipal liability, this case falls into the narrow range of circumstances where a pattern of similar violations might not be necessary to show deliberate indifference. ECF No. 51 at 25. Specifically, Plaintiff points to the single incident liability that the Supreme Court hypothesized in *City of Canton v. Harris,* 489 U.S. 378, 390 (1989). In *Canton*, the Supreme Court left open the possibility that a pattern of similar violations might not be necessary to show deliberate indifference where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* In *Canton*, the Court posed a hypothetical example of a city that arms its police with firearms and deploys the armed officers to capture fleeing felons without training the officers in the constitutional limitations on the use of deadly force. *See id.* n.10. The Second Circuit has also offered guidance on when an inadequacy in training reaches the level of deliberate indifference, saying a "training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make

15

such a showing." *Reynolds*, 506 F.3d at 193 (quoting *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 27 (1st Cir. 2005)).

Here, it is undisputed that RPD trains its officers on using deadly force against dogs. *See* ECF No. 50-1 at 27; ECF No. 51 at 26. Plaintiff's specific arguments are that the training is inadequate because (1) it is too short; (2) it lacks an interactive component; (3) the presenter lacks the necessary expertise in dog behavior; and (4) it should incorporate materials from the U.S. Department of Justice's Community Oriented Policing Services program on how to handle dog encounters. ECF No. 51 at 26.[3]

The Court concludes that Plaintiff has not provided evidence that her failure to train claim falls into the narrow circumstances hypothesized in *Canton*. This case is distinguishable from the hypothesized scenario in *Canton* because in the *Canton* example, the armed police officers were not given *any* training on the constitutional limits of deadly force. In this case, it is undisputed that RPD provides officers with training related to using deadly force against dogs and that the training discusses the Fourth Amendment implications of using deadly force against dogs. ECF No. 51-1 at 7; ECF 50-17 at 5. Additionally, even assuming that everything the Plaintiff has said about the inadequacies of the training is correct, it is insufficient to meet the deliberate indifference standard. Plaintiff's only objections are to the content and the duration of the training, which are just arguments that the training is not in the precise form that Plaintiff would prefer. *See* ECF No. 51 at 26. Thus, the evidence proffered by Plaintiff is not enough to show that municipality's failure to

---

[3] While Plaintiff also argues that officers involved in dog shootings testified that they could not recall certain aspects of the training and that the sheer number of dog shootings demonstrate the inadequacies of the training, these are not arguments that explain how the training is inadequate. *See* ECF No. 51 at 27. The Court therefore construes these arguments as providing further evidence that the manner and duration of the training is inadequate.

train amounts to deliberate indifference and therefore, Plaintiff has failed to establish municipal liability.

In sum, Plaintiff has failed to establish municipal liability because she has not demonstrated a pattern of misconduct, which is required to support her custom or usage, failure to train, and failure to supervise *Monell* claim. Additionally, she has failed to show that her claim falls into a narrow range of circumstances in which establishing such a pattern is not required. Therefore, the Court grants summary judgment to Defendants on the First Claim.

## II.    Second Claim: Unlawful Seizure of Personal Property in Violation of the Fourth and Fourteenth Amendments Under 42 U.S.C. § 1983

Concerning Plaintiff's claim related to the alleged unlawful seizure of Plaintiff's dog, Taz, the Court concludes that Officer Vanbrederode is entitled to qualified immunity and, therefore, summary judgment on the claim.

The doctrine of qualified immunity shields government officials from civil damages liability unless "the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (internal quotation marks and brackets omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (internal quotation marks omitted). "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown 'make out a violation of a constitutional right' and 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (summary order) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

17

As discussed above, the Court concludes that Plaintiff has provided sufficient evidence of a violation of a constitutional right. However, the Court also concludes that Officer Vanbrederode is entitled to qualified immunity because the right alleged by Plaintiff was not clearly established at the time of the challenged conduct. For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It is not necessary to find a "case directly on point" to show that the law governing a plaintiff's claim is clearly established, but existing precedent must have placed the constitutional right "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Additionally, the right must have been recognized by either the Supreme Court or the Second Circuit. *Id.*

Here, Plaintiff argues that after the Second Circuit's decision in *Carroll v. County of Monroe*, it was clearly established that using unreasonable force against a dog is unconstitutional. ECF No. 51 at 20. The Court disagrees. In *Carroll*, the Second Circuit held that the unreasonable *killing* of a companion animal constitutes an unconstitutional "seizure" of personal property under the Fourth Amendment. 712 F.3d at 651. In its decision, the Second Circuit cited numerous cases from other circuits, which similarly held that killing/destroying a dog could constitute a seizure under the Fourth Amendment. *Id.* While there does not need to be a "case directly on point" to show that the law governing a plaintiff's claim is clearly established, there does need to be existing precedent that placed the constitutional right "beyond debate." *Ashcroft*, 563 U.S. at 741.

As the Second Circuit used the word killing when defining the constitutional violation in *Carroll* and cited no cases finding an unconstitutional seizure where a dog was wounded or injured but not killed to support its holding, the Court cannot conclude that it is beyond debate that wounding, shooting, or injuring a dog—without killing the dog—constitutes an unconstitutional

18

seizure. *See* 712 F.3d at 651. Neither *Caroll* nor the cases cited therein delineate the precise circumstances in which the "interference" with the possessory interest in the dog—absent killing the dog—reaches the level of "meaningful" for Fourth Amendment purposes. Therefore, it is unclear whether the "interference" in this case—that the dog is more skittish and less playful than he was prior to the shooting—reaches the level of "meaningful" for Fourth Amendment purposes. Thus, qualified immunity is appropriate.

As discussed above, the parties cite only one district court decision in this Circuit that has recognized that the nonfatal wounding of a dog could be an unconstitutional seizure in violation of the Fourth Amendment. *See Shimburski*, 2020 WL 5653298, at *8. While this Court agrees with the holding in *Shimburski*, it also acknowledges that there is no Second Circuit or Supreme Court decision recognizing such a right. As such, the Court concludes that the right alleged by Plaintiff was not clearly established at the time of the challenged conduct, and therefore, Officer Vanbrederode is entitled to qualified immunity.

## III.     Third Claim: Trespass to Chattels/Conversion

Plaintiff also alleges state-law claims for trespass to chattels and conversion, ECF No. 5 at 22, over which the Court may exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). But where, as here, a district court "has dismissed all claims over which it has original jurisdiction," the court "may decline to exercise supplemental jurisdiction" over the state-law claims. *Id.* § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3)," it must "balance[ ] the traditional values of judicial economy, convenience, fairness,

and comity." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (internal quotation marks omitted).

Judicial economy favors declining jurisdiction because this case has not progressed beyond summary judgment. Generally, when federal-law claims are "eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (internal ellipses omitted). The parties have briefed the Court on whether it should exercise supplemental jurisdiction over the remaining state-law claim. ECF Nos. 55, 56. Having considered the factors and the parties' briefings on the matter, the Court discerns no exceptional circumstance that would distinguish this case from the "usual case" where a district court should decline to exercise jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The issues presented in Plaintiff's remaining claim implicate no federal policy concerns and since discovery is complete "the parties are equipped to present that question to a state court expeditiously." *Martin v. Sprint United Mgmt. Co.*, No. 15 Civ. 5237, 2017 WL 5028621, at *4 (S.D.N.Y. Oct. 31, 2017). Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state-law claim, which is dismissed without prejudice.

20

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 50) is GRANTED. Plaintiff's claims under federal law are DISMISSED WITH PREJUDICE. Plaintiff's state-law claim for trespass to chattels/conversion is DISMISSED WITHOUT PREJUDICE so Plaintiff may refile in state court if she wishes. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 8, 2025

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York